I would also like to save four minutes for rebuttal. To some extent, Mr. Barnard's case dovetails very nicely with Talamante's because he also was no longer confined when he filed his lawsuit. In fact, the district court ruled that he was entitled to the tolling provisions of California's Code of Civil Procedure. And so the statute of limitations had not run. And although I didn't brief this, it's one of those things that just occurs when you're preparing. A reasonable person relying on a tolling provision would assume that everything that he would have to do in order to bring his lawsuit would also be tolled. So if he did have to file administrative remedies, if the court found that, indeed, there were some and I agree with Mr. Price, Mr. Barnard certainly wasn't advised of any administrative remedies. So there's no evidence that the jail or the county or the sheriff's department had any available to him. He should still be allowed to do it after the fact because  However, the other significant thing about Mr. Barnard's case is that he also was not a prisoner because he had not been judicially accused of anything. He had just been arrested and beaten near to death by his arresting officers. So again, he doesn't fall within the language of the statute under the literal language that Mr. Price just read to the court, but also under Porter. Claims by an arresting officer have been under Porter v. Nusselt, court excluded. At what point does your client become a prisoner? Prisoner is defined by the statute. Does he have to be booked? Does he have to go to a cell? Or does he become a prisoner when he's under confinement by the arresting officer? I think it's when he's been to court, looking at the other language, when he's been formally accused. So a complaint has been served or issued or when he has been denied bail or when he's been adjudicated to be in violation of conditions of pretrial release. Is there any language in the statute itself, which we're attempting to define, that gives you some help or assistance in your definition of when a person becomes a prisoner? I think it's exactly what Mr. Price just read about a prisoner being confined in response to an accusation or a determination by the court or a conviction. And an arrested person hasn't been accused. But we need to even go there as to who is a prisoner and prisoner exhausting, because the statute talks about exhaustion of administrative remedies only for actions that are brought with respect to prison conditions. So I'm wondering here, if you file an excessive force claim, does it in any way fall within the category of prison conditions if it's before you ever got to a facility? No. I don't think the Act is applicable at all, because it's an excessive force claim during the arrest. His other claim is a violation of a court order. And, again, a violation of a court order may be what happened to him if he had said, okay, you're responsible directly for what the other inmates did under deliberate indifference. But if you have a court order, you've gone to court. So I think to the extent that you're supposed to, if you were supposed to exhaust remedies there by going to court and getting a court order, I think you probably did. So he goes to court, and the court says you're supposed to be in protective housing, and they don't put him in protective housing. That is prison conditions, correct? I would think it's not. I would think it's a violation of a court order, and so that the prison conditions would be a part of it. Well, that's different. It could be more than one thing. It could be a violation of a court order, and it could be an action related to your case, correct? It could be. That's not the way that it was construed by a plaintiff in the district court, and not in subsequent conversations with the counsel that did the pleading. The assumption is that it's not. It's the violation, the contempt, if you will, by the sheriff's department that precipitated it. But let me ask you this. Let's say you're in court, and the prisoner comes in, and the defendant is complaining about something going on. The judge says, look, you know, I make this recommendation to the prison authorities that you need to provide this medical care, or to put him in a special segregated cell for some reason, and then they don't do it. Isn't that the kind of thing that you would normally have to exhaust? No, because I think you've already – I mean, they know they didn't do it. They knew they were supposed to. A judge made a finding. I don't know what there would be to exhaust. I don't see what purpose there would be in exhausting. And again, we fall back on what administrative remedies were there to exhaust in the first place. Okay. So I would say the rest of my time for rebuttal. Jonathan Redford, on behalf of the appellees, County of Los Angeles, Deputy Michael Gibbons, Deputy Sergio Peralta, Deputy Ramon Lascano, and Carolina Roman. Responding to the appellant's arguments with respect to prison conditions, in this case, we have two separate claims. We have the claim of excessive force, and then the claim which is either a failure to obey a court order or a failure to protect. However, we want to look at that claim. With respect to the first claim for excessive force, while Judge Wallace's point is well taken with respect to where do we draw the line as to at what point does somebody become a prisoner for purposes of the PLRA, per the terms and the definition of prisoner, somebody becomes one when they are incarcerated or detained in any facility, and they are accused of a violation of criminal law. Opposed to what appellant would have you believe, there's no language regarding formally accused in the definition. Let's say he's a prisoner, but is the excessive force which allegedly took place during the arresting process and before he was in any kind of facility, is that a suit against prison conditions? That's where I'm having a little stumbling block. I believe that may not, Your Honor, but in this particular case, if we look at the allegations in the second amended complaint on page three excerpt of record one, all that's alleged is that plaintiff was arrested and taken into custody on April 7, 2003, and after his arrest and after he's taken into custody is when he's unlawfully and wrongfully allegedly beaten nearly to death. The next allegation states that from the time of his arrest until the time that he's released from prison approximately two years later, he was incarcerated and in custody of the County of Los Angeles. It's my contention that based on these vague and ambiguous allegations, we do not know at what point in time this alleged use of excessive force occurred. It could have occurred immediately after the arrest. It could have occurred at any point in time before his release from custody, and we simply don't know. And suppose, hypothetically, suppose you had excessive force used in the arrest. It was far away from a prison, far away from a station house, and nothing else in the case. That's it. Would they have to exhaust? I believe that's a tougher call, Your Honor, based on the language in Porter which references pre-incarceration claims not applying to the PLRA in the context of the conduct of an arresting officer's conduct pursuant to 1983. That may not apply. However, I should note that when Porter discussed that issue, it was not a holding and it was merely surmising as to what the intent of Congress was in defining prison conditions. Well, as Judge McEwen indicates, there's not much that can help him about changing prison conditions if he's over in South L.A. at the time and he's had a difficulty with the police. So I'm having a problem seeing where the statute's involved at all. In this case, what did the district judge do with that issue? The district court agreed with our position that both of Mr. Barnard's claims involved prison conditions. I believe the issue was raised in the context of the vague and ambiguous nature of these allegations which were in a second amended complaint which did not reference when or where this alleged use of excessive force occurred. And so even if you gave even if you assumed, and it's appropriate for you to do so, it seems to me, that had there been an arrest and he was never taken to a prison, but he's then charging that he's then charging that it was improper conduct by the police officers, that'd be a different case. What you're saying here is eventually he did go to the lockup and it's vague at what point this attack took place, whether it was outside the prison or within the lockup. That's correct, Your Honor, and I believe what makes the situation a little more vague is that the deputies involved are from the Los Angeles County Sheriff's Department who not only perform patrol duties out in the streets, but are also custodial officials in the Los Angeles County jails. So it's plausible that the deputies involved in these allegations could have been arresting officers, could have transported Mr. Barnard to a facility, and could have been his custodial officers at that location. But in any event, we still have the problem with at least one of these claims as to whether it needs to be exhausted. One or both, I mean, I understand your argument, but at least one of them is an in-prison problem, correct? That is correct. Mr. Barnard's second claim as a... So my question there, you probably had the opportunity to sit through the last argument. I did. And I'm wondering if you have any further illumination for us on interpretation of this language in terms of somebody who files, who is no longer a prisoner. I can try. It's our argument that despite the plain language set forth in the PLRA, that the exhaustion requirements apply to out-of-custody litigants. And this is based on looking at the policies behind the PLRA, which are clearly set forth in Booth and Porter. The primary policy, which I'd like to focus this court on, is that if a claim is eventually brought forth to court, the adjudication of said claim would be much better facilitated if there's an administrative record, which, as the Porter court notes, would clarify the contours of the controversy. As Judge Wallace aptly brought out the example of delaying litigation, that's the primary argument here. We can have a scenario where there's an inmate who suffers what he perceives to be a constitutional harm. And at the time that that occurs, he knows he's going to be released from prison, say, a month out. And rather than filing the appropriate administrative internal grievance process, he simply knows he doesn't have to do so because he can, once he gets released, he can file a civil lawsuit related to that harm. Assuming that he does that, once we get to that point, there's no administrative record regarding that alleged harm. There's nothing for the court to go off of related to that. And I believe that's the key here, and that's a reflection of what Congress was trying to prevent when they enacted this statute. While the appellees acknowledge the plain language meaning of the statute, we would argue that based on the congressional intent as set forth and explained by the higher court in Booth and Porter, that it would apply to out-of-custody litigants. You know, it makes some sense in terms of administrative law. That's the traditional way. Seems like we can't win here. If we read the language straight up, you lose. And we would have to say, well, we go on the policy reason. In which case the Supreme Court said, no, you're supposed to read the language. If we read the language and they'll say, no, but there is this big policy in Woodford. So I'm wondering if this isn't a classic example where Congress needs to tidy this up rather than the court. What's your view on that? Well, I would point to the cases cited in the brief, the Morgan case primarily, as well as the Zaner case from Indiana. Both of which look to Booth and Porter for guidance. And based on the policies set forth in there, they conclude that Congress could not have intended otherwise, but to include out-of-custody litigants as having to exhaust their administrative requirements pursuant to the PLRA. My position is that despite the fact that other circuits have held to the contrary, that given the Woodford case and the guidance provided therein, that it would be appropriate for this court to adopt a ruling which would apply the PLRA to out-of-custody litigants. I have one other question. Going back to the initial question I was on, the first charge, you indicated that there was a lack of clarity as to when it took place in the allegations. I don't see, I just went back and reviewed again the district court's opinion. I don't see where the district court made that determination as to why the first one should be included. It seems to be just general that they're going to. I believe it was a generalized conclusion reached by the district court as set forth in the underlying motion to dismiss. So after that took place, did the defendant make any additional motions of the court to clarify that issue, the first issue that I've been talking about? It did not, Your Honor. Again, based on the vagueness and ambiguity of the allegations at the time that the court issued its ruling, it agreed that both of Mr. Barnard's claims involved prison conditions, and at that time it agreed to dismiss the case without prejudice. And that's what appellees ask. The court said he was a prisoner at the time of the events, so I guess we're in that situation where a district court is able to weigh and make some evidentiary findings on exhaustion, is that right? That's correct, Your Honor. And that's why appellees would ask this court to affirm the district court's ruling. Thank you. Thank you very much. Do you have some rebuttal if you want? Ms. Adams, I started to interrupt earlier to tell you, that table is for your use, and I saw you moving through your papers, and you could have possibly done it better. Yes, I saw that. But I didn't want to interrupt his answers, so I couldn't tell you. But in the future, you can certainly make use of it. Your Honor, I found it easier to use the bench than to try to navigate the chairs with the chairs in my hand. The other thing that's missing, which I still haven't heard from appellee in the previous case or in this case, is any showing that there were any administrative remedies. And the statute says to the extent that a prisoner has to exhaust administrative remedies, he's only required to exhaust such administrative remedies as are available. There weren't any. He didn't have to do it anyway, no matter how you read the statute, no matter where you decide he was, until there is a showing that there was something he was supposed to do. Even if it's only in, I'm going to get the name of this case wrong, the case where the deputy put the forms in the inmate's bloody shirt. And they said, oh, well, he had been given some notice of remedies, and they unhappily found that that was adequate. We have nothing like that in this case, Your Honors. And the reason why the Court should have held a hearing would have been to clarify just those ambiguities, because the plaintiff made absolutely clear in his opposition to the motion that these were pre-incarceration claims, or at least the claim involving the beating. If the Court does not have any further questions, I will submit. I think not. Thank you. Thank you. I thank both counsel for your argument this morning. Garner versus Gibbons is submitted.
judges: Wallace, Farris, McKeown